I guess we're a little early here. We're anxious this afternoon. Let me say this. Justice Chapman is the third judge on this case, and she is not able to be here today, but of course she'll listen to the arguments on tape. So I'm proceeding. All right. All right. Please proceed. My name is Bill Schroeder, and I'm representing the defendant and now the appellant in this case. This is a really tragic case. I say that by way of introduction. It's probably the most tragic case I've ever been involved with. It's two young people are dead. Another young person, an unmarried veteran, is in prison for ten years. And it's all because they went drinking one night, and it turned out in a very tragic way. The defendant here was sentenced to ten years in the Department of Corrections, and I want to address initially the sentencing issue in this case, because that's a fairly straightforward issue, and I can cover it in just a couple of sections here. To get a ten-year sentence, the judge checked off on the sentencing guide, this little sheet there, three reasons for giving a sentence above the minimum, which I think would have been six years. The three reasons were serious injury or harm to others, criminal history, deterrence. Those were the three reasons. Then among the mitigating reasons was given the absence of a criminal history. So my thought on that is simple. One, the factor, criminal history or absence, that washes out. I don't see how it can't cut both ways. It can't be both a mitigating factor and an aggravating factor. But the important thing is a serious injury or harm to others. That's inherent in the offense. And even the state has conceded there's a double-counting problem here. The factor in aggravation was a factor that's inherent in the offense itself, and it's a double-counting situation. The judge clearly has, and the state concedes that in its brief. So the only question in front of us here today is are we going to remand for a new hearing. And I would urge that we do remand, and the reason basically is simple. We counted the criminal history, which really involved underage drinking and illicit liquor or science, very minor offenses. We counted the criminal history as an aggravating factor, and then we counted the absence of a criminal history as a mitigating factor. So to me that washes out, leaving the only aggravating factor deterrence of others, which is something I think, one, is present in every case, and it's not a real factor. And two, it's not an ordinary individual factor. And two, if a person gets six years or eight years or ten years, to give someone an extra two years to deter others, the public doesn't look at the length of the sentence. They want to know that people have been found guilty. But to give someone two extra years, no one's going to sit there and say, well, I would have gone drinking and driving if I was only going to get six years, but since I was going to get ten, I wouldn't do it. Nobody thinks like that. So I have real doubts about that as an aggravating factor at all. But anyway, my point is, once we wash out the criminal history, which I think we have to because it was counted both in aggravation and mitigation, all we're left with as an aggravating factor is deterrence of others. And I think under those circumstances, we need a new hearing so that we can go back and the judge can reconsider her sentence and decide what's appropriate under the circumstances. Now, turning to the substantive issues in this case, and they're made complicated by a procedural aspect of this. The defendant's counsel in his original trial after sentencing abandoned him. It's not an ineffective assistance question. She abandoned him. She retired. She abandoned him, Your Honor. She simply retired. She did nothing. He was just abandoned. She didn't file a motion for a new trial. She didn't file a notice of appeal. She didn't do anything. And someone who saw this happen went shopping for an attorney, and quite frankly, it's not really directed, but I mentioned the history, called me, asked me if I knew anybody who would do it, and I wound up volunteering to be the one. And I enlisted another attorney, Justin Keene, and the two of us wound up doing it because the defendant needed an attorney in this case because he had been abandoned by his other attorney. Well, the problem we were confronted with then was we have to file a motion for a new trial. The motion for a new trial was late. By the time we had the case, the 30 days had come and gone. So we're trying to file a late motion for a new trial under those circumstances. And I would simply say to the court, under these circumstances, this isn't an ineffective assistance saying this isn't a late motion. The actions of the attorney who abandoned the defendant cannot be attributed to the defendant as some kind of waiver of his rights to file because he was abandoned by the attorney. And there's a Supreme Court case, Maple v. Thomas, that we cite in our brief that makes that clear, that this was an abandonment situation, and the trial judge should have let us file the motion late. Simply, she still had jurisdiction. Yes, we're outside the 30 days. The 30 days is mandatory. I know that. So it says. But it's still legal to hear the motion had she chosen to. And I think what was particularly troubling on that issue was that the state filed a motion to strike. Their motion to strike was an oral motion in clear violation of local rules. The judge, nonetheless, said, basically, well, you're going to file a written motion, right? To which the attorney responded, oh, yes. And, of course, then they did file a written motion. So my point is, though, if we were going to be held to the rules the 30 days, then the state should have been held to the rules, too, and not allowed to file a written motion. But more fundamentally, I think the basic point is, where the defendant was abandoned by his counsel, we should have been allowed to file a proper motion for a new trial. What would be the relevance of that? The standard of review. If our motion isn't allowed, the things I'm about to say are going to be heard under a plain error standard. Otherwise, it would have been heard under the ordinary standard where error is preserved. So that's the difference it makes. Maybe that's not an outcome determinant of the difference, but it is a difference. And as I would say, I don't think there's – this is not an ordinary case of an attorney who didn't file and was late, and that's attributed to the defendant. This is an attorney who abandoned her client. And that, I think, cannot in fairness be attributed to the client. All right. So now, if we could, we'll move on to the substance. The first part of that trial was presented – the first witnesses against the defendant were presented – was presented – those witnesses were presented in the form of depositions. And that's an important issue that I want to address. So I've got some links here. The depositions were of two girls. One, I think, lived in Switzerland. The other lived in Germany. The two students who were killed in here were visiting foreign students, and they were from Switzerland, I think. One was originally from Poland, I think. The other was from Germany. In any event, these two people who testified were from, I think, Germany and Switzerland. Their stay here as students ended shortly after the accident, so they went back to their home countries. Now, at some point before they left, the state took their testimony under Rule 414. We don't contest that the state had a right under Illinois Supreme Court Rule 414 to preserve their testimony. And the state seems to think we're arguing about that. We're not arguing about that. We're good with that. They had every right to preserve their testimony. The question is, did they have a right to use that testimony? That's the question. Did they have the right to use it at trial? Because the only way they can use it is if these people are unavailable. And no showing, the burden of showing unavailability is on the people who want to use the testimony, the state here. They made no effort at all to show unavailability. None. Not any effort of any kind in any way, shape, or form. They didn't even say they weren't here in the country at that time. They simply went ahead and used the depositions. And that, I would suggest, is a denial of the defendant's right of confrontation. We cite a couple cases. Counselor, the first one I remember was, did trial counsel object to the use of the depositions? Yes. There was an objection to the use of the, taking any use of the depositions, yes. Now, how clear it was as to the reason, I'm not certain. But I think the, I tried to find that, and I couldn't get exactly how clear they were as to the reasons that were advanced. But I would suggest to you, however, that this deposition is, one, hearsay. Two, it's testimony that's being used as denial of the right of confrontation. So, and the reason is because, as a system, we preserve, we prefer, rather, live testimony. We want live testimony, not deposition testimony, if there's any way we could get it. The Supreme Court has made clear, there's an Illinois case we cite, People v. Torres. And that Illinois case quotes at some length from Ohio v. Roberts. And there's a lot of language in there, not all of which, unfortunately, was included in our brief. But it is cited, it is included in Torres, which we cite from Ohio v. Roberts, where the court says, if there's no possibility of procuring a witness, for example, where the witness is dead, good faith demands nothing of the prosecution. But otherwise, the prosecution has to make a good faith effort, even if, quote, if there is a possibility, albeit remote, that confirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. And then it goes on to say, this opinion, Roberts' opinion, that the exact nature of those measures turns under faster circumstances of each case. I would suggest that a minimum in this case, the government had an obligation to call these people and write them in Germany or Switzerland, wherever they were, try to find out exactly where they were, and ask them, would you like to come? They might well have come. They might have come on their own money. They might have paid to come. They might have come as part of a vacation. They might have wanted to come back and visit the United States again. So some opportunity had to be made, though, some effort had to be made, rather, to give them the opportunity to appear. Would the state have to buy them an airline ticket? We could debate. We could debate whether that's reasonable or not. I don't know whether it's reasonable. But I do know that calling them on the telephone and writing them a letter is something that could easily have been done. They could have been notified of the trial date, and they could have been given the opportunity to physically appear. The state made no effort at all to do any of that, and we would suggest that, therefore, the use of these depositions was absolutely, totally improper. There was no showing at all of unavailability. Unavailability would be determined by what's now in my rule of evidence 804, and the reasons are listed in there. Not amenable to subpoena or other reasonable means. All right, well, they're in Germany. They obviously aren't amenable to subpoena. I concede that. But other reasonable means could include a telephone call and a request, and that's what the rule speaks to. Not amenable to being brought here by service or other reasonable means. And I think there are other reasonable means. The state made no effort at all to use these depositions. They didn't even say that the people weren't physically here at the time. They didn't even try to prove they were actually in Germany. They simply said, well, we're using the depositions we took. So in any event, Your Honor, we would submit that that's error, and the rule that this whole situation has to be analyzed as I said, in terms of a two-step process. One, the taking of the deposition. Two, the use of it. There are a couple of cases, Your Honor, that I would like to cite to the Court that aren't in the brief that I found. I know I probably have to file a motion to cite supplemental authority, and I'm happy to do that. If I could cite and mention the case names here for oral argument. Any objections to dealing with that? I have no objection to supplemental. I have no objection to argument. You have no objection to supplemental? I have no objection to supplemental. Okay. But he has the argument. I have to give you an argument, so I wouldn't object to any argument. If I'm not going to argue the substance of the case, Your Honor, I'm just going to cite their names for the record so it's heard. I can cite it. Okay. That's fine. If he wants to file it, I can oral argument it. All right. And you can do that. And would you like seven days to do that? That would be fine, Your Honor. Should I read the names here? Go ahead. Okay. I'm sorry. With the holiday coming up, we maybe want a little bit more extra time. Yeah, I think we actually need seven days to take us to Christmas Day. That's right. How about 14 and 14? 14. Okay. Thank you. The two are Hardy v. Cross, 132 Supreme Court, 490. That's a 2011 U.S. Supreme Court case. And in that case, the state did quite a bit of things. And the court said that was adequate, and they did. They made, I don't want to say heroic efforts, but they made a lot of efforts. And it shows what a good faith effort might be. The other is an Illinois case by name of People v. Payne, a 1930 Illiop III, 624, 1975 case, that shows the considerable efforts the state made in that case to get the victim there. And it was held not to be adequate, notwithstanding many phone calls, many visits, all kinds of things. So I will get those within 14 days, Your Honor. Returning to the rest of the case here, the rest of our arguments, there are two other arguments here. And the importance of these depositions is without the depositions, without the defendant's statements that I'm about to address, there'd be no way to put the defendant in the vehicle or at the accident or behind the wheel. So, yes, they could show his blood intent, alcohol level, they had that, but there wouldn't be any way to associate him with the vehicle without this testimony that we're trying to get rid of here, the depositions. And without the unmirandized statements, which is what I want to address now, when the accident happened, the defendant got out of the car and he was holding the hand of one of the dead people, the girl, and crying. That was the scene that the police came to when they came to the accident scene. He was holding the hand of the girl who had passed out. The point of this is simple. The officer came to him and said, what happened? Then about two questions later, there was a question, did you have anything to drink? How much? And the defendant made some statements, which the government was happy to bring into evidence, which were, in fact, incriminating statements. Now, those statements were not preceded by the so-called Miranda warning. Our argument is simple. They can't be used because there was no Miranda and there was no waiver. The state claims and the trial judge found that the defendant wasn't in custody. I would suggest to your honors that he was clearly in custody for a number of reasons, the most salient of which is that he was forbidden by statute, 625 IL CS 5 slash 401. We cite that one in the brief. He was forbidden by statute from leaving. The statute says the driver of any vehicle involved in a motor vehicle accident resulting in personal injury or death to any person shall immediately stop such vehicle and remain at the scene of the accident, blah, blah, blah. So the point is, ordinary people are assumed to know the law. A citizen is assumed to know the law. You'll never have a defense, as we all know, based on I would never have done it if I'd known it was illegal, but I didn't know. So he's assumed to know the law. If you know the law, an objectively reasonable person would have felt that he or she was not free to leave because the law is clear. You have to remain at the scene of an accident involving death or personal injury. Then the court goes out and talks about the need to give the other people your information and stay and stay in rendering aid and all those kinds of things. So aside from any other factor in this case, a reasonable person would never feel free to leave after an accident involving death or serious personal injury because they are assumed to know the law and they can't go. On the facts of our case, they took his license. They told him to remain at the scene. There were assumed four or five officers. It's, to my mind, very, very clear that he was, in fact, in custody. The state relies on Berkmer v. McCarty, the case about traffic staff, the Supreme Court case, so the traffic staff, you're not in custody, ordinary traffic staff. Berkmer speaks several times, ordinary traffic staff, usual traffic staff. This was not even a traffic staff. Berkmer really has nothing to do with it. What this has to do with is an accident scene involving death. The police come on to that scene and they ask questions, and that's clearly an interrogation. They ask questions of the defendant, who is, I think, clearly in custody, and they needed to proceed those questions with Miranda and get a valid waiver, and they did not do that. So we would argue strenuously that all of the statements made at the accident scene are clearly inadmissible under these circumstances because they weren't proceeded by the Miranda warning and a valid waiver and because he was, as I say, in custody because the law forbade him to leave. He could not leave the scene whether he wanted to or not. Apart from the police taking his wallet and his license, apart from them telling him to stay, legally he couldn't leave without committing a felony. All right. So that brings us then to the second set of statements, the statements that are made at the station house. Ultimately, he's placed under arrest. He makes some damaging statements at the accident scene. He's taken to the station house. They get him to the station house, and it takes, I think, seven minutes. He falls asleep. It takes seven minutes for the troopers to wake him up, seven minutes. He's that far asleep or drunk or whatever or concussed from the accident. It's somewhat unclear why he can't be woken, but seven minutes is a long time. Most of us wake up fairly easily. I get a couple seconds usually if somebody just says something to us in the middle of the night or the phone happens to ring or something. Seven minutes of shaking before he wakes up. He wakes up. They wait the 20 minutes for the breathalyzer, the required 20 minutes, and then they give him random warnings, and then he makes some more damaging statements. So there's two arguments we would have here. One is the Seabird, Missouri v. Seabird that we cite. The first unwarranted statement contaminates the second. We recognize that that's a little bit of a tough road to follow because the first unwarranted statement may have not been a deliberate attempt to circumvent Miranda, which seems to be, judging from Justice Kennedy's opinion in Seabird, maybe that's what's needed. It's a little unclear, but it may not have been a deliberate attempt by the police to circumvent Miranda. Maybe it was a deliberate attempt, and I think that's a possible finding. But I think the problem in this case with the second statement is the defendant's still at .176 when they do the blood test. The defendant is highly intoxicated, more than twice the legal limit. It's taken seven minutes to wake him up. He may or may not have injured his head in the accident. That's somewhat clear. But he's disoriented, whether it's a result of the injury, whether it's a result of the stress of the situation, whether it's a result of the alcohol. And counsel, time's expired. Can I finish that sentence here? Sure. I would simply say on that basis, because of those events, he did not make a knowing, intelligent, and voluntary waiver. I will grant the rights. Thank you. Thank you. Argument from the State. Thank you, Your Honor. May it please the Court, Professor Schroeder. I want to start first with the post-trial. There's an issue here I want to discuss straight up front. It's not really talked about in the briefs, but I think it's probably important when we discuss this case in the broader terms of what happens if the Court ultimately agrees with the defendant that the post-trial motion was improvidently not heard by the Court because of the timing. There are two cases that were discussed in the briefs, People v. Tollock and People v. Harper. Harper is actually a Fifth District case. In both those cases, the Court had ruled that the post-trial motion was improperly not considered by the Court. Although they were not timely filed, there were certain considerations that led the Court to consider them, that the Court should have undertaken to have a hearing on Harper, in particular the court in Veronese would leave me with no jurisdiction to hear the post-trial motion. In Tollock, the Court then proceeded to go ahead and consider the rest of the defendant's substantive arguments on appeal. This court in Harper ultimately decided to send it all back to the circuit court. And so the question or the issue that I want to talk about here briefly is, what do we do if this Court decides that the motion was not properly heard or the Court improperly granted the State's objection to not hear the post-trial motion? I would argue that this case is probably closer to Harper than Tollock. And the reason for that is that in Harper, what animated this Court's ultimate decision to send it back and not consider it was because there had been a new issue that had been raised, which it felt that it would have been better, given the circumstances, to go back for the Court to consider as a matter of initial impression before that Court. Whereas Tollock was essentially substantive trial issues, which the Court appeared to believe that it could go ahead and consider. Now, there is an issue in this case, which was not discussed during Professor Shorter's argument due to time constraints most likely, and that was whether there was juror misconduct in the consideration of evidence, if you will, during the jury deliberation process. Because the Court ultimately refused to hear the post-trial motion, the only thing really on record at this point is that the defendants essentially offer proof for public purposes. I mean, half the data that was submitted by the investigator defendant. This is not an ordinary trial issue. This is actually an issue which involves consideration of facts that are off the record and requires the circuit court to essentially make an initial determination of whether the defendants met the threshold inquiry to allow the subpoenaing of jurors to question them what happened during the deliberation process and whether the jurors had gone outside their proper roles and considered evidence improper. In this case, there was an allegation that two of the jurors, one had driven to the scene of the accident, which they had visited during the course of the trial as well, and the other one was someone who researched something on Google Earth, I presume related to the traffic, locus of the traffic scene itself. Because there was a lot of testimony about blind curves and things like that, so the scene is certainly relevant to the aggravated DUI aspect of this case. But the aggravated case has not been developed, and this Court really can't rule on that in any way in the absence of that development. It can't certainly rule for or against necessarily on the basis of the affidavit. So that being the case, I would ask this Court, if the Court does ultimately agree, that it was improperly considered that it should bring the entire thing back to the circuit court, rather than piecemeal this litigation, and then we can deal with it again later once the full record has been made of the jurors' conduct this year. With regards to whether the motion was improperly stricken, the defendant makes an argument about abandonment. I want to make two points in that regard. Well, number one, the Supreme Court has held that it is not ineffective assistance of counsel to not file post-trial motions. And in consideration of that, it's understood that issues not raised would be taken up under the plain error rule, which is more or less the same thing. There have been recent discussions on its relationship to ineffective assistance of counsel and the prejudice prong of the ineffective assistance of counsel. So what that sort of leads us back is that it's kind of an equity argument, like, well, it's just really not fair. Looking at my notes, I'm not even sure how much was developed at the circuit court level about this abandonment position. But I'm presuming for the sake of argument that it was. Ultimately, the Court has extraordinary discretion to determine and decide whether it wishes to consider an untimely post-trial motion. It was conceded at the trial that the motion was untimely by a number of months. With regards to the local court rule, the local court rule states that there has to be required as a local court rule 9 of the Second Judicial Circuit. And it requires that motions be in writing and that they be, and that their notes be provided to the other side. And that it also provides that the Court has the discretion to consider to take motions there with or without notice to be reset within 60 days. So the rule sort of inherently contemplates motions that may not have been properly served or not served on the opposing counsel. Defense counsel glosses over a lot of predicate facts in this issue. What had happened was that the State did make an oral motion. The defendant did object and did raise an issue with regards to the local court rule, which I think the Court appeared to be cognizant of because it had been told the State and more or less directed the State to file a written motion in this case, which the State did. And the defendant was then given an opportunity to file an opposing response. Now the Court had initially actually, and I'll admit this as much, but the Court had actually initially granted the State's motion. Counsel for the defendant, Professor Schroeder, actually asked the Court to hold the Court's judgment in this regard in abeyance pending the written pleading which the Court agreed to. So while local court rules are considered statutory and therefore must be adhered to, there's no prejudice in this case by the lack of that, if it even is a lack of attention to a given effect. Like I said, the Court has the option of resetting something to a later time if there's no notice provided. Because everyone did provide written arguments. The defendant had the opportunity to see in writing what the State's position was. It had the opportunity, which it did, to provide a lengthy response. And the Court ultimately ruled nonetheless that it was going to uphold its earlier finding that it was going to strike untimely post-trial motion. So that's all I'm going to say on that particular issue. I'm going to move on to the suppression issue. Unless this Court wants me to address something else first. Okay. In this case, there was an accident. And I'm going to give a couple quick facts here. There was an accident. And the defendant had exited his vehicle to try to provide some assistance to the people that were on the roadway. Counselor, let me interrupt you for a second. Yes, yes, sir. I do want to hear your thoughts on this citizen. Yeah, sure. And I figured you would. So don't run out of time. I'll jump right to that. I fully concede that the Court hadn't considered improperly a factor inherent in the defense. A couple of considerations to be made there. Number one, the scoring review of the record. The fact that the Court does consider a factor inherent to the defense does not automatically mandate remand for a new sentencing hearing. Among the considerations are essentially to the degree to which the Court had placed emphasis on that particular consideration. And also, the type of sentence that the defendant received as it relates to the minimum and maximum for the defense. And this offense in 2007 was 6 to 12? It was 24. 6 to 24? I think so, yes. And nonprobation? It might be 18. It changes. I'm trying to remember exactly what the year framework was. Ultimately, it was like 4 years over the minimum and like 12 years under the maximum. So I think he got a 10-year sentence. And it was nonprobation, is that correct? That's correct, yes. So, I mean, I think if we read the record, this Court will make that judgment call, obviously, if we read the record. I think the Court, while it had considered that, it considered other things as well. One thing I do want to point out, though, is that this, the defendant did file a proper post-sentencing motion in bringing this before the Court. The State argued that, well, you know, what, okay. But what we're really trying to argue now is that there was other people that were affected by this other than the people who died. So there was extensive argument made. The Court considered this, and the Court is presumed to know the law. So having been, obviously, made aware of that particular consideration at that point, the Court nonetheless proceeded therefrom to affirm its prior sentencing decision. So I think it's one other fact that this Court should take into consideration in determining whether or not a remand is necessary. So, yes, there was error. I will submit that it's not error that requires, under these circumstances, a remand for resentencing hearing. I think that's at this Court's discretion and upon review of the entire record. But those are factors I want this Court to take a look at when it gets a chance to look at the record carefully and closely. Going back to the suppression issue, so there's an accident. The defendant exited the vehicle, provided assistance, was outside the car, and apparently was bleeding this from both the suppression testimony and from the trial testimony, because this Court can't consider all of that in consideration of whether the Court properly ruled on a motion to suppress. An officer arrived and found the Troy Love, I believe is the officer's name, found the defendant outside, sitting, crying, outside of the squad car. He was very upset, obviously, based upon what happened. He asked him what happened. He made some inculpatory statements to Officer Love, which the defendant challenges here on appeal for the first time, but does raise that particular point in the brief. Trooper Morris, Officer Morris, who was the testifying officer, if you will, for the other inculpatory statements that were issued in the suppression issue, there was testimony from the defendant and from Trooper Morris and also a videotape. And I think that when you look at it all together, what appears to happen is this. As that officer, Morris, arrives, he begins to speak with the defendant and asks him to basically step to the side by the squad car. Now, they're outside the squad car. He's not handcuffed. There's no weapons drawn. There's no circumstances here indicative of anything other than basically a roadside questioning, if you will. And I'm going to talk about this Brooklyn case here in a moment. Then basically asked him what happened, smelled the alcohol on his breath, and then asked him whether he'd been drinking. And then after that, asked him to do a field sobriety test. Of course, at that point, you know, you move away from the investigation and into essentially, you know, detention of an arrest-type major. Clearly an arrest after he performed a field sobriety test in his place in the squad car. Now, the Supreme Court has held consistently that general on-the-scene investigation of an offense does not constitute a situation that necessitates Miranda warnings. The defendant's attempt to sort of parse out Berger or say, well, the defendant wasn't stopped in this case, it wasn't a traffic stop, I think probably undermines the defendant's argument rather than enhances it. Because in a traffic stop situation, you're driving along the road, you look out behind you, the lights are flashing, you're pulled over. So now you are directly in the custody, if you will, of this police officer when the officer comes up and begins asking him questions. But none of that even happened in this case. Here, it was nothing more than an officer walking up to a guy and asking him what happened. I mean, there wasn't even that show of police authority that's inherent in traffic-type situations that the Supreme Court held that even in that inherent traffic situation of the lights and the exertion of police authority, you don't get to the necessity of Miranda at that time. So in a way, this is less than rather than more than the coercive detention situation that's contemplated in cases involving Berger and another case of that ilk. The Supreme Court has recently held, in fact, that there's really two parts to the inquiry. Number one is whether a person, whether a reasonable person would objectively believe that they were not free to leave. It's called the freedom of movement test. The court emphasized, and that's really almost the defense of all argument, because that's all they have to go on, but the Supreme Court emphasized in that case, Howell v. Fields, that there's more to it than that. Freedom of movement's never been held to be just the pure, simple test of determining whether a marine is a required. They also have to have the inherent coercive pressures of the type of stationhouse questioning that occurred in the Miranda case itself. Well, that obviously did not happen in this case, and the Supreme Court probably determined that that's not what happened in this case. It reviewed the evidence, it saw the video, and I think the video, as good as any video of that nature is going to be, which is a great, but it certainly seems to bolster the notion that the interaction between the defendant and the officer was basically, I came up to you and I asked you a couple questions, and it happened. That is really the type, exactly, almost indistinguishable from any type of situation of on-scene investigative questioning, and that's what happened here, and that's it. And the defendant's inculpatory statement basically came right out from that. So the court was absolutely correct in denying the motion to suppress an act. With regards to the Mirandized inculpatory statements made after the defendant was arrested, it's true, I would assume, that it did take them a while to wake up the defendant from where he was sleeping or doing something while they were processing stuff. You know, when you get there, things kind of happen for a while before they get around to talking to you. Trial testimony indicated the defendant's blood alcohol concentration was, I believe, .176, so he was over twice the legal limit. But I think that it's important to note that it wasn't really the defendant's argument below that intoxication is somehow impaired, and it's probably a strategic negligence because in very few cases of health, that's going to be enough to get you around a Miranda problem. What they had argued was that the defendant had suffered a head injury or concussion, hitting his head on the steering wheel or something like that at the time of the accident. There was testimony from the defendant's mother that he had a symptom-type issue inconsistent with a concussion and they gave him some Tylenol to help him. The defendant testified that he had blacked out and, in fact, couldn't remember anything regarding the interrogation up until the time his father was in his father's car on the way home after being processed. Conrad had a testimony, of course, as a testimony of officer. He said that he was lucid, that he had declined any kind of medical treatment at the scene. He declined the questioning, that he received any injuries. He had no visible injuries. And so, you know, in the Fifth Amendment context, of course, the State bears the initial burden proved by preponderance of the evidence that the confession was voluntary. The State, I think, met that burden here, certainly by virtue of the combination of the videotape, which really doesn't show a lot, but the defendant basically kind of got over it and kind of acted normally, and the trooper Morris' testimony about what the defendant said, his appearance based upon his prior knowledge as well of what had injured individuals or life characteristics. And that being the case had been shifted to the defendant to sort of overcome the State's proof of this preponderance. And I don't think that that was met in this case where it was testimony of a particular injury of severity which engendered no medical treatment whatsoever anywhere, although one would suppose that a person who blacks out for an extended period of time suffering a severe concussion would require something a little bit more than a couple of tile on the table. So I think that the Court under the full spectrum of facts in this case, and it has to make that, you know, principal determination of credibility, you know, the officer's testimony and versus that of the defendant and his witnesses, made that determination that it was a reasonable one, it was based upon facts, and it was based upon the Court's superior position to consider the testimony of the officer and it made the right decision in that case. So I believe that the circuit court properly denied both parts of the defendant's motion to suppress him for the medical. Lastly is the question about the deposed testimony. Now, again, the argument by counsel is glossing over some interesting and I think very relevant and important facts. Let's see how fast I can get through them. What happened in this case is the two witnesses were exchange students from Switzerland and Germany. They were there on an exchange program. Their time was about to expire. They were going to go back to their country and were done. They had no testimony under buttons. They were leaving and they were not coming back again. So they were leaving the U.S. And at that point, it was unclear when the trial was going to be. Ultimately, of course, the trial was actually more than a year later after they left. So the trial court's determination that we should properly capture their testimony was correct. And I believe that the state had made that threshold showing along with unavailability. That threshold showing, I think, the changes between the trial and the second trial. If you're not aware, note that there was actually two trials. There was this trial and the second trial, which occurred a couple of years later. So I think that's really what the defendant's argument was relating to is that later trial, the state didn't come forward. I want to make one important point here because there's probably a lot of time left. The record shows that there was a hearing based upon what appeared to be an objection by the defense counsel of the use of these deposition testimonies in the second trial, the retrial. I know Justice Schwarm has something to that effect. There's no transfer to that. So I am resistant to an objection. Essentially, a lot of the argument here about, well, the state didn't do this, that, or the other, when I don't know what the state did or didn't do. And it's not the state's burden to provide a complete record to show what happened. There was obviously a hearing, and we don't know what happened in this hearing. The court ultimately allowed the state to move forward. So I don't think that it's appropriate necessarily to say the state failed to do something when we don't know for a fact that they didn't. Because they might not have. But that's not our burden as athlete to disprove the defendant's argument when it's not supported by factual basis of the record. Thank you, Your Honor. Very much. Rebuttal. I agree, Your Honor. I know I have to be. A couple of quick thoughts here. On the sentencing issue, the argument is made that because the judge denied our motion to reconsider, she therefore took into account the law and, in fact, didn't consider, however it's made, it's a somewhat congruent argument, didn't consider the improper package. That would make every motion for reconsideration kind of self-defeating, because if the judge doesn't give the reconsideration that you asked for and change the sentence, you've therefore lost. So I think that argument just happened. And it's a congruent argument, which is hard to follow, Your Honor. But that seems to be what they're saying. And in any event, I would just simply say in the sentencing we're left with one aggravating factor, which is a very general undeterrence, and really one mitigating factor, which was that he made restitution. So all the factors washed seemingly. I know the weight could arguably be different, and we're never going to know what weight should be given of it without a sentencing hearing. On the visit to the scene, if the court agrees with us on the motion for a new trial, we would like the hearing, full hearing there of what jurors might have gone to the scene. That's a matter of traditional economy. Could it be raised in a collateral attack? Yes, it could. But as a matter of traditional economy, saving of resources, if the motion for a new trial, if we do get that motion heard in front of the court, then we'd want the hearing on the jury scene visit as well. Now, on the motion for a new trial, quick thought. Our point is pretty simple. The court had jurisdiction to grant our motion for a new trial in here. The court did not. It's not an issue of the court exercising discretion and saying we're not going to hear it. The court didn't think it had any discretion. I think the record seems to show it thought we were outside the time limit of 30 days. Therefore, the motion was going to be rejected. But the court had jurisdiction. Until a notice of appeal was filed, the court could hear our motion for a new trial, whether it was outside the 30 days or not. And in refusing even to give it consideration, that's simply a question of an error of law. I think that's not a use of discretion. The court simply made an error of law. It should have considered our motion. It should not have attributed the delay to my client because he was abandoned by his attorney. Now, on the depositions, just moving quickly here, the same thing with the depositions. There's no showing in the record that they ever even at that second trial asked that the witnesses be declared unavailable. They have to make some kind of showing. They have to say these witnesses are unavailable. They didn't. Again, it's not an abuse of discretion standard. There was no discretion that appears to have been exercised. It's simply assumed that the people were in Germany or Switzerland or wherever and therefore could not come back. So there is no abuse of discretion. It's simply an outright failure to raise this issue and to make any kind of showing. And the burden is on them to make the showing. It's not up to us to show the other way. They had that obligation. Now— Counsel, how about the point of there was no record regarding using the depositions at the second trial? Do you agree with Mr. Ailey on that? I looked also to find something and was unable to find anything meaningful. That's a correct statement, Your Honor. And do you know was there a hearing or even really as pretrial matters right before the trial was that discussed? I could not find a motion. I could not find anything. There's nothing from the state that the state would have the obligation to make a motion and say to the court these people are not available. There's no record that the state ever made a motion of that kind. And then we would have had it. There would have been a debate over that. Well, when the defendant had the obligation at the trial when they start to use the video depositions, hey, you can't use those. Well, didn't we do their objection to the deposition? They did at the trial? Yes, at the second trial. As I understood the record, it was renewed at the second trial. Now, I hope the record bears that out. But that was my understanding of it. It was renewed. Now, exactly what was renewed is not altogether clear, whether what was renewed was an objection to the taking of the deposition or whether the use of the deposition was raised or not. And that's what I'm a little unsure of at this point. But some kind of motion was made. That I'm confident about. But just turning to the last thing, the question of the concussion, the state was complaining that down below the concussion was raised as a reason that the defendant was disoriented. And now we're arguing more in terms of his intoxication. I don't mean to reject the concussion. But our point is simply he was disoriented. There were a lot of different things going on. We have no way of knowing which of those things had the most effect. All I can say is that the total effect was such that he could not make a knowingly valid solitary waiver. Thank you. Thank you, counsel. Counsel will take this case under advisement. Yeah, 14 and 14 on the additional authority. Let's go to the final case set for oral argument today.